IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00662-NYW-KAS

DELANO MEDINA,

    Plaintiff,

v.

RAMIREZ, Sgt.,

    Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(a)** [#69][1] (the "Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#73] in opposition to the Motion [#69], and Defendant filed a Reply [#74]. The Motion [#69] has been referred to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#70]. The Court has reviewed the briefs, the entire

---

[1] [#69] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation. The Court generally refers to the page numbering found on the Court's CM/ECF docketing system when citing briefs and other documents. With respect to transcripts, however, the Court cites the page numbers of the transcripts themselves.

[2] The Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Further, pro se litigants are subject to the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

case file, and the applicable law. Based on the following, the Court **RECOMMENDS** that the Motion [#69] be **GRANTED**.

## I. Background

Plaintiff's only remaining claims in this litigation seeks non-compensatory damages based on Defendant's purported violations of his First Amendment rights. *Recommendation* [#39] at 8-12, 15-16; *Order* [#41] at 11. According to the undisputed summary judgment evidence,[3] at all times relevant to this litigation, Plaintiff was incarcerated with the Colorado Department of Corrections ("CDOC") and housed at the Colorado Territorial Correctional Facility ("CTCF") in Cañon City, Colorado. *Ex. A, Depo. of Pl.* [#69-1] at 6:10-22. On February 25, 2021, he was assigned as a kitchen worker at CTCF, working the food service line. *Id.*; *Ex. B, Job/Program Assignments* [#69-2] at 1; *Ex. E, WebFOCUS Report* [#69-5] at 1.

Plaintiff belongs to the Messianic Jewish faith. *Ex. A, Depo. of Pl.* [#69-1] at 16:20-22. According to Plaintiff, the Messianic Jewish faith forbids its adherents from handling

---

[3] Because Plaintiff "fail[ed] to properly address [Defendant's] assertion[s] of fact," the Court "consider[s] the fact[s] undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2); *see Hampton v. Barclays Bank Del.*, 478 F. Supp. 3d 1113, 1121 (D. Kan. 2020) (concluding that "because plaintiff has controverted none of defendants' facts, the court can consider those facts undisputed for purposes of summary judgment"), *aff'd*, No. 20-3175, 2021 WL 3237082 (10th Cir. July 30, 2021).

Further, the Court notes that Plaintiff submitted no summary judgment evidence in connection with his Response [#73] to the Motion [#69]. Although Fed. R. Civ. P. 56(c)(4) allows a complaint to be treated as an affidavit if it is based on personal knowledge and has been sworn to under penalty of perjury, that is not the case here; Plaintiff's operative Complaint [#4] is not verified. Because Plaintiff did not submit his Complaint [#4] sworn under penalty of perjury, it cannot be considered as an affidavit for Rule 56 purposes. *See Green v. Branson*, 108 F.3d 1296, 1301 n.1 (10th Cir. 1997).

2

foods it considers "unclean," which includes pork products. *Motion* [#69] at 3 ¶ 5.[4] However, Plaintiff canceled his kosher diet on June 25, 2018, and has since been on a "regular menu" diet. *Ex. C, Pl.'s Diet Form* [#69-3] at 1; *see also Ex. D, July 16, 2021 Incident Report* [#69-4] at 1 ("We brought to his attention that he is not listed as kosher and he also eats shortline trays that are not kosher foods as well.").

Ordinarily, Plaintiff would not have to physically handle any trays containing non-kosher foods. *Ex. A, Depo. of Pl.* [#69-1] at 15:22-24. However, prior to July 16, 2021, there were occasions when Plaintiff either volunteered or at least did not object to handling food trays which had foods that are considered forbidden for consumption and/or handling by the Messianic Jewish faith. *Id.* at 13:19-25. When he did handle these trays, it was incidental, and he would wear gloves. Id. at 16:6-12.

CTCF's kitchen has separate food carts for regular diets, special diets, and kosher diets. *Id*. at 9:1-22. The special diets area includes kosher foods, and there is a separate kosher room. *Id.* at 8:16-23, 9:12-22. As of July 2021, Plaintiff was reassigned to the kosher area of the kitchen, once a position there became available. *Ex. E, WebFOCUS Report* [#69-5] at 1.

In July 2021, the time of the primary incidents underlying Plaintiff's claim, Defendant was employed by CDOC as a corrections sergeant and had work assignments which included the food service/kitchen area of CTCF. *Answer* [#44] ¶¶ 3, 7. On July 16, 2021, Defendant ordered Plaintiff to help other inmates empty food carts. *Ex. E, WebFOCUS Report* [#69-5] at 1. Plaintiff stared back at Defendant without saying

---

[4] Defendant failed to provide page 17 of Plaintiff's deposition, *see* [#69-1], which it asserts supports this fact. *Motion* [#69] at 3 ¶ 5. Nevertheless, for the reasons previously explained, the Court considers this fact to be undisputed. *See supra* n.3.

3

anything, walked over to the pots and pans area, and did not help the other inmates empty the food carts. *Id.* Five minutes later, Defendant saw Plaintiff in the north dining hall and again ordered him to empty the food carts. *Id.* Plaintiff responded by saying that he would only do twenty trays. *Id.*

As a result, Defendant brought Plaintiff to Lt. Vargas's[5] office to be counseled by both of them, and Plaintiff was told that he would be removed from the kosher area because he refused to assist in other areas of the kitchen. *Id.* Plaintiff claimed that working in other areas of the kitchen would violate his religious beliefs, despite having done so for the previous four months. *Id.* Plaintiff was then ordered to work in the dish area, which he also refused, and so he was sent back to his cell house. *Id.*

Five days later, on July 21, 2021, Defendant observed that Plaintiff was refusing to help the offenders on the food service line and instead was sitting at a table with another offender. *Ex. F, Case Note* [#69-6] at 1.

Two days after that, on the afternoon of July 23, 2021, Defendant was working on the south food service line with Plaintiff. *Ex. E, WebFOCUS Report* [#69-5] at 2. When Plaintiff walked to where staff were standing, he was ordered to continue working because they were not done serving yet. *Id.* However, Plaintiff refused and began speaking to staff about other issues. *Id.* Because he refused to work, Lt. Vargas sent Plaintiff back to his cellhouse, and food service sought his termination for refusal to work. *Id.*

On August 7, 2021, Plaintiff's work status officially changed from "food service" to "unassigned." *Ex. B, Job/Program Assignments* [#69-2] at 1. The reason for his termination from food service was because of his pattern of refusing to follow staff orders

---

[5] Lt. Vargas was dismissed from this case on March 22, 2023. *See Order* [#41].

4

and failing to perform his job tasks. *See Ex. D, July 16, 2021 Incident Report* [#69-4]; *Ex. E, WebFOCUS Report* [#69-5]; *Ex. F, Case Note* [#69-6]. Defendant never issued a direct order to Plaintiff to physically touch any food that would violate Plaintiff's religious beliefs. *See Ex. A, Depo. of Pl.* [#69-1] at 16:6-12. Plaintiff can only "surmise" that Defendant was responsible for his removal from food service. *Id.* at 31:13-23.

As a result of these circumstances, Plaintiff asserts that his First Amendment right to the free exercise of his religious faith was violated and that he was impermissibly retaliated against in violation of his First Amendment rights. In the present Motion [#69], Defendant seeks entry of summary judgment in her favor on both remaining claims.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

In determining whether summary judgment is appropriate, the Court resolves factual disputes and draws reasonable inferences in favor of the nonmovant. *Chase Mfg., Inc. v. Johns Manville Corp.*, 79 F.4th 1185, 1195 (10th Cir. 2023). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal

5

quotation marks and citation omitted) (emphasis in original). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party, and a fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *Anderson*, 477 U.S. at 248, 256. When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> . . .

> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

### III. Analysis

A qualified immunity defense "protects government officials from civil liability so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). To determine whether qualified immunity applies, the Court considers (1) whether "the officers' alleged conduct violated a constitutional right," and, if so, (2) whether "it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (citation and internal quotation marks omitted). "When a defendant in a § 1983 action raises a qualified immunity defense, the plaintiff bears the burden of overcoming it." *Ashaheed v. Currington*, 7 F.4th 1236, 1243 (10th Cir. 2021).

**A.   Free Exercise**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. "It protects against government

7

regulation of religious belief or conduct and has been applied to the states through the Fourteenth Amendment's Due Process Clause." *Ashaheed*, 7 F.4th at 1243 (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940)). The clause applies not only to laws passed by legislation but also to executive action, as is relevant to the present case. *Id.* To be constitutional, the executive action must be neutral, generally-applicable, and "rationally related to a legitimate government interest." *Id.* If the action is not neutral or generally applicable, then it is unconstitutional unless "narrowly tailored to advance a compelling government interest." *Id.* (citations and internal quotation marks omitted). "[E]xecutive action motivated by the plaintiff's religious commitments is not neutral and is a violation of his clearly established constitutional rights under the Free Exercise Clause, even if not motivated by overt religious hostility or prejudice or animus." *Id.* at 1244 (internal quotation marks and brackets omitted).

Here, Defendant argues that Plaintiff fails to demonstrate that any action taken by Defendant imposed a substantial burden on Plaintiff's exercise of his religious faith. *Motion* [#69]. The definition of a "substantial burden" is the same under both the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *Williams v. Hansen*, 5 F.4th 1129, 1133-34 (10th Cir. 2021). A burden on religious exercise is "substantial":

> when (at the very least) the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief—for example, by presenting an illusory or Hobson's choice where the only realistically possible course of action available to the plaintiff trenches on sincere religious exercise.

8

*Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014) (defining a substantial burden under RLUIPA). This inquiry is subjective: "'we take religious claimants as we find them, assessing the coercive impact [of] the government's actions on the individual claimant's ability to engage in a religious exercise, as he understands that exercise and the terms of his faith.'" *Williams v. Wilkinson*, 645 F. App'x 692, 702 (10th Cir. 2016) (quoting *Yellowbear*, 741 F.3d at 55).

The Court begins by reviewing some of the material facts underlying this claim. Plaintiff canceled his kosher diet on June 25, 2018, and has since been on a "regular menu" diet, which includes non-kosher foods. *Ex. C, Pl.'s Diet Form* [#69-3] at 1; *see also Ex. D, July 16, 2021 Incident Report* [#69-4] at 1 ("We brought to his attention that he is not listed as kosher and he also eats shortline trays that are not kosher foods as well."). Thus, Plaintiff appears to have ingested non-kosher foods for almost three years by the time the incidents underlying this lawsuit occurred.

Plaintiff began working the food service line on February 25, 2021. *Ex. A, Depo. of Pl.* [#69-1] at 6:10-22; *Ex. B, Job/Program Assignments* [#69-2] at 1; *Ex. E, WebFOCUS Report* [#69-5] at 1. On multiple occasions over the next five or so months, prior to July 16, 2021, Plaintiff either volunteered or at least did not object to handling food trays that had foods deemed forbidden for consumption and/or handling by the Messianic Jewish faith. *Ex. A, Depo. of Pl.* [#69-1] at 13:19-25. When he did handle these trays, he wore gloves. *Id.* at 16:6-12.

On July 16, 2021, Defendant ordered Plaintiff to help other inmates empty food carts. *Ex. E, WebFOCUS Report* [#69-5] at 1. Plaintiff stared back at Defendant without saying anything, walked over to the pots and pans area, and did not help the other

9

inmates empty the food carts. *Id.* Five minutes later, Defendant saw Plaintiff in the north dining hall and again ordered him to empty the food carts. *Id.* Plaintiff responded by saying that he would only do twenty trays. *Id.* Thus, Plaintiff consented to do twenty trays, and there is no indication that he informed Defendant of any objection based on his religion.

Based on the evidence before the Court, Plaintiff raised the issue of his religion on only one occasion: during the meeting that followed this July 16, 2021 incident, when he claimed that working in other areas of the kitchen would violate his religious beliefs. *Id.* However, there is no evidence regarding what precise aspect of this other work violated his beliefs, particularly in light of the fact that he had done that work for the previous four-plus months, apparently without objection. Defendant did not, at either this time or at any other time, issue a direct order to Plaintiff to physically touch any food that would violate Plaintiff's religious beliefs. *See Ex. A, Depo. of Pl.* [#69-1] at 16:6-12.

On July 21, 2021, Defendant observed that Plaintiff was refusing to help the offenders on the food service line and instead was sitting at a table with another offender. *Ex. F, Case Note* [#69-6] at 1. There is no indication that Defendant ordered Plaintiff to do anything at this time. On July 23, 2021, Plaintiff was ordered by Defendant to continue working because they were not done serving. *Ex. E, WebFOCUS Report* [#69-5] at 2. Plaintiff refused, apparently without providing a reason, and despite having done some work that day on the food service line. *Id.*

Even assuming that Plaintiff meets his burden of demonstrating a constitutional violation by showing a substantial burden on the exercise of his religious faith, Defendant is entitled to qualified immunity on the second prong of the analysis, i.e., regarding whether there was clearly established law prior to July 2021 that Defendant's actions

imposed a substantial burden on Plaintiff and thus were unconstitutional. On the record before it, and for the reasons that follow, the Court cannot find that Defendant was "plainly incompetent" or "knowingly violate[d] the law." *Wesby*, 583 U.S. at 63.

For qualified immunity, the right must be "clearly established at the time of [the] defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quotations omitted). "District court cases lack the precedential weight necessary to clearly establish the law for qualified immunity purposes." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1306 (10th Cir. 2021). Rather, "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012). "An unpublished opinion . . . provides little support for the notion that the law is clearly established on [a] point." *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007). However, "an unpublished opinion can be quite relevant in showing that the law was not clearly established." *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (emphasis omitted) ("If we make the collegial, and quite legitimate, assumption that panels of this court render reasonable decisions, we would be hard pressed to say that a proposition of law was clearly established at a time when an unpublished opinion by a panel of this court said the opposite").

Plaintiff "bears the burden of citing to [to the Court] what he thinks constitutes clearly established law." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). However, the Court itself has found no Tenth Circuit published case, including those cited by Plaintiff, to show that "the violative nature of [the] particular conduct [had been] clearly

11

established" by July 2021, when the primary actions at issue here occurred. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Plaintiff cites three cases which he implicitly asserts demonstrate his clearly established rights in a similar context.[6] *See Response* [#73] at 1-3 (citing *McEachin v. McGuinnis*, 357 F.3d 197, 205 (2d Cir. 2004); *Hayes v. Long*, 72 F.3d 70 (8th Cir. 1995); *Williams v. Bitner*, 455 F.3d 186 (3d Cir. 2006)). In *McEachin v. McGuinnis*, 357 F.3d at 204-05, the incarcerated plaintiff "claim[ed] that he was disciplined for failing to obey an order expressly given to him by a corrections officer who knew that completion of the task would require plaintiff to abandon religious prayers in which he was then engaged." The plaintiff was then "subjected to a week-long restricted diet of 'loaf'," which violated his religious beliefs because he was required "to break his Ramadan fast each day with[out] properly blessed (Halal) food." *McEachin*, 357 F.3d at 199. The Second Circuit reversed dismissal of Plaintiff's First Amendment claim upon referencing clearly established law. *Id*. at 203-05.

In *Hayes v. Long*, 72 F.3d at 72, the Muslim incarcerated Plaintiff was ordered to help prepare pork chops despite the inmate telling the correctional officer that "his Muslim beliefs forbade the handling of pork[.]" The Eighth Circuit determined that the law was clearly established "that Muslim inmates have the right to avoid contact with pork or with any food that has been contaminated by pork." *Hayes*, 72 F.3d at 74. In *Williams v. Bitner*, 455 F.3d at 187, the Muslim incarcerated Plaintiff was assigned to work as a cook and

---

[6] The other cases to which Plaintiff refers are cited for broad propositions of law. *See Response* [#73] at 1-4 (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002); *Larson v. Valente*, 456 U.S. 228, 244 (1982); *County of Allegheny v. ACLU*, 492 U.S. 573, 604 (1989); *Zorach v. Clauson*, 343 U.S. 306, 314 (1952); *Moskowitz v. Wilkinson*, 432 F. Supp. 947, 948 (D. Conn. 1977)).

12

was ordered to help make a meal involving pork. When he refused, he was fired from his kitchen job. *Williams*, 455 F.3d at 187. The Third Circuit Court of Appeals held that the law was clearly established that "prison officials must respect and accommodate, when practicable, a Muslim inmate's religious beliefs regarding prohibitions on the handling of pork." *Id.* at 194.

The Court finds that none of these cases demonstrate that the right at issue here was clearly established in the context of this lawsuit. This situation is not so clear-cut as any of the cases cited by Plaintiff, including *Hayes*, where Muslim inmates were ordered to handle pork despite their well-known proscription against the practice. None of Plaintiff's cited cases involved the type of extenuating circumstances present here, where Plaintiff had been eating non-kosher meals for almost three years, had worked for several months on the food service line apparently without objection, was never ordered to physically touch any food that would violate his religious beliefs, wore gloves when he handled the trays, and only mentioned his religion once without identifying the aspects of his job that violated his religion. Under these circumstances—even assuming that a constitutional violation occurred—the Court cannot find that Defendant was "plainly incompetent" or "knowingly violate[d] the law." *Wesby*, 583 U.S. at 63.

Accordingly, the Court **recommends** that the Motion [#69] be **granted in part** to the extent that judgment enter in favor of Defendant on Plaintiff's First Amendment free-exercise claim.

**B.     Retaliation**

In short, Plaintiff's second claim asserts that Defendant retaliated against him for the exercise of his religious rights by removing him from food service. "[P]rison officials

may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted). However, "[g]enerally, retaliation claims within the prison system ought to be considered warily," *Harrell v. Lira*, No. 23-CV-00062-ABJ, 2024 WL 886623, at *8 (D. Wyo. Feb. 21, 2024), because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct," *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

A First Amendment retaliation claim consists of three elements. *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1226 (10th Cir. 2020). First, the plaintiff must show that he "was engaged in constitutionally protected activity[.]" *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Second, the plaintiff must show that the defendant's action caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity[.]" *Id.* Third, the plaintiff must provide evidence that the defendant's "adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Id.*

Here, Defendant argues that Plaintiff fails to meet the first and third elements. *Motion* [#69] at 12. Even assuming Plaintiff meets the first element, the Court agrees that he has not provided adequate evidence in support of the third element. Defendant argues that Plaintiff has not demonstrated that Defendant had Plaintiff unassigned from the kitchen. *Id.* at 12. Plaintiff testified that he "surmised" that Defendant engaged in the action—but this is the *only* evidence Plaintiff proffers against Defendant. *Ex. A, Depo. of Pl.* [#69-1] at 31:13-23. Thus, Plaintiff has not brought forth evidence demonstrating that

*Defendant* engaged in the at-issue purportedly retaliatory action. *See, e.g., Melnick v. Marlow*, No. 21-cv-03316-CMA-KLM, 2023 WL 2796667, at *5 (D. Colo. Feb. 15, 2023) (recommending dismissal of inmate's First Amendment retaliation claim because the plaintiff had not shown that the at-issue defendants had taken the allegedly retaliatory action), *report and recommendation adopted*, 2023 WL 2674420 (D. Colo. Mar. 29, 2023). In other words, Plaintiff has not shown that Defendant took any action in connection with his formal removal from food service employment, let alone action that could be deemed substantially motivated by an exercise of Plaintiff's protected conduct.

Accordingly, the Court **recommends** that the Motion [#69] be **granted in part** to the extent that judgment enter in favor of Defendant on Plaintiff's First Amendment retaliation claim.

## IV. Conclusion

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that Motion [#69] be **GRANTED**, and that judgment be entered in favor of Defendant on Plaintiff's claims.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must

be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir.1996).

Dated: February 10, 2025                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge